**WESTERN ROBIDOUX PRINTING & LITHOGRAPHING CO., INC.,**
Appellant,

v.

**MISSOURI STATE HIGHWAY COMMISSION, Respondent.**

No. 57093.

Supreme Court of Missouri,
Division No. 2.

Sept. 10, 1973.

Carter & Newmark, Joe Bill Carter, Clayton, for appellant.

Robert L. Hyder, Chief Counsel, Paul Tochtrop, Asst. Counsel, Jefferson City, for respondent.

STOCKARD, Commissioner.

Plaintiff has appealed from the judgment of the circuit court dismissing its petition for failure to state a claim upon which relief can be granted. At the time the notice of appeal was filed this court had appellate jurisdiction by reason of the amount in dispute, and jurisdiction is retained pursuant to Mo.Const. Art. V, § 31 (1945), as amended, V.A.M.S. We affirm.

We shall set forth in narrative form the allegations of the petition.

Plaintiff was the lessee of premises known as 208–214 Edmond Street, St. Joseph, Missouri, owned by Douglas Candy Company (hereinafter referred to as "Douglas"), and also the lessee of adjoining premises known as 216 Edmond Street, owned by Fred Hunt. We shall refer to these premises as the Douglas and Hunt properties.

The Hunt property was purchased by the defendant (hereinafter referred to as the Commission) in 1967, and thereafter plaintiff entered into a leasing arrangement with the Commission. On May 2, 1968 plaintiff received notice to vacate the Hunt premises on or before September 15, 1968. There is no allegation that this was prior to the expiration date of the lease with the Commission or that plaintiff had any right to renew the lease.

Plaintiff had been lessee for many years of the Douglas premises under an oral lease, but a written lease was executed September 15, 1965. The lease was re-

newed in 1966 and again in 1967. By its terms the lease expired on September 16, 1968.

Prior to July 21, 1967, plaintiff and Douglas had a "cordial and honest business relationship," Douglas had stated on many occasions that plaintiff could remain on the premises as lessee indefinitely, and plaintiff expected to renew the lease on September 15, 1968. In reliance on the occupancy of the Douglas property for many years, the written lease, and the cordial and honest business relationship with Douglas, plaintiff installed printing machinery at the cost of $150,000 and made other improvements of a type and nature to be permanent for the anticipated useful life of the equipment.

In July 1965, agents of the Commission contacted plaintiff concerning the acquisition of its interest in the Douglas property for the construction of a highway. After extended negotiations during which offers and counteroffers were made, the parties did not reach an agreement.

In July 1967 the Commission advised plaintiff by letter that it would be sometime before the design for the proposed highway would be completed, and that it would be "unnecessary for the defendant to acquire any property rights which the plaintiff had" in the Douglas property. Plaintiff was further advised that it could remain as an occupant "until the termination of [its] lease, September 16, 1968," and that it was the Commission's position that "there were no rights that it was necessary for the [Commission] to acquire from the plaintiff."

In June 1968 plaintiff was advised by Douglas that it had "a contract with [the Commission] agreeing to sell" the Douglas property to the Commission, and that plaintiff was to vacate the premises on or before September 15, 1968. On September 6, 1968 plaintiff was advised by the Commission that it had purchased the Douglas property. There is no allegation as to the time the Commission actually acquired its interest in the property pursuant to the contract to sell.

Plaintiff then alleged that the Commission entered into a contract of sale with Douglas whereby it permitted Douglas to retain possession until September 15, 1968, and allowed the lease of plaintiff to expire, and then required plaintiff to vacate the premises; that to induce Douglas to enter into the contract of sale, the Commission offered the owner all or a portion of those funds which it had allocated to purchase the interest of plaintiff in the property; that the Commission later paid those funds to Douglas; that the contract of sale was negotiated and concluded while the agents of the Commission were negotiating with plaintiff, and the acts of the Commission "were in bad faith" and "willfully and deliberately" led plaintiff to believe that an agreement to purchase plaintiff's interest was certain; and that the contract of sale was negotiated with knowledge on the part of the Commission that it "was misleading the plaintiff, and that [the Commission] had no intention of purchasing plaintiff's interest," but the purpose was to delay negotiations with plaintiff until the agreement with the owner could be concluded, or until the owner could be induced not to renew the lease, which renewal plaintiff had relied upon in making the improvements, and that by reason of these acts of the Commission plaintiff was damaged.

Other allegations in the petition need not be set forth because the points presented on this appeal do not present an issue as to them.

Plaintiff's first point is that the trial court erred in dismissing its petition because it "had a legally protected property interest which [the Commission] failed to acquire." As we understand plaintiff's point, the contention is that when the Commission purchased the Hunt property, and purchased or contracted to purchase the Douglas property, plaintiff was a lessee in

possession, and the Commission had a legal obligation to acquire at that time plaintiff's leasehold interest.

We cannot agree that there was such a duty on the Commission. It is true that in a condemnation proceeding pertaining to property which is subject to a lease, the interests of the lessor and of the lessee are ordinarily obtained at the same time and the compensation to be paid is ascertained as though the property belonged to one person, and that sum is then apportioned between the lessee and lessor. City of St. Louis v. Wabash Railroad Company, 421 S.W.2d 302 (Mo. banc 1967). An exception to this rule is recognized in State ex rel. McCaskill v. Hall, 325 Mo. 165, 28 S.W.2d 80 (1930), which is not material to the issues before us. In a condemnation proceeding the compensation is determined as of the time of the taking. If the property is subject to a lease at that time, the owner of the leasehold interest is entitled a share of the compensation for his loss. However, we do not here have the situation where the Commission sought to condemn and bring about a taking of property for highway purposes during the term of an existing lease. Instead, the Commission sought to purchase the interest in the land needed, a procedure it not only is authorized to follow but must attempt to do in good faith before it can condemn. State ex rel. State Highway Commission v. Pinkley, 474 S.W.2d 46 (Mo.App.1971). When obtaining the right of way for a highway the Commission necessarily must obtain the interest in some of the parcels of land before the date of its actual use. We see nothing improper for the Commission to negotiate only with the owner of the fee of land, which is subject to a lease, for the immediate or future purchase of the interest needed for highway purposes when it knows that the lease then existing will expire before the land will actually be used for the construction of the highway. The owner of the fee could sell the land to another person subject to the lease, and we see no reason why in the factual situation of this case, the Commission should be prohibited from negotiating with and purchasing from the owners of the Douglas and Hunt properties, subject to plaintiff's lease, the interest required for highway purposes.

We agree that the leasehold interest of plaintiff in each of the properties was a legally protected property interest. City of St. Louis v. Senter Commission Co., 233 Mo.App. 804, 108 S.W.2d 1070 (1937). But, an owner of property, whether it be in fee or a leasehold interest, is not entitled to compensation unless his property has been taken or damaged for public use. "While it is not always necessary that there be an actual physical taking of any part of property in order to have a taking or damaging thereof within the meaning of Art. I, § 26, Constitution of Missouri 1945, * * * it is necessary that there must be an invasion or an appropriation of some valuable property right which the landowner [in this case, the lessee] has to the legal and proper use of his property, which invasion or appropriation must directly and specially affect the [owner] to his injury." Hamer v. State Highway Commission, 304 S.W.2d 869, 871 (Mo.1957).

In this case plaintiff's leases to both the Douglas and Hunt properties terminated on September 16, 1968, and the Commission did not in any way interfere with the full enjoyment of either leasehold interest prior to its termination. Plaintiff does not contend that it had any legal right to hold over after the termination of either lease, or that it had a right to renew either lease. It is immaterial to the issues before us whether the Commission acquired a fee title or only the right to use the property for highway purposes. In either event, at the termination of plaintiff's leases, the Commission was entitled to possession and was entitled to direct plaintiff to vacate the premises. In Land Clearance for Redevelopment Authority of Kansas City v. Dunn, 416 S.W.2d 948 (Mo.1967), it was held that

a tenant from month to month had no interest in condemned property which entitled him to compensation. Plaintiff's interest in the property, after its leases expired, was certainly less than a tenant from month to month. Plaintiff's petition did not state a claim upon which relief can be granted on the basis asserted in its first point in its brief.

For its second point plaintiff asserts that the Commission's "actions in dealing with plaintiff were in such bad faith as to constitute a taking or damaging of plaintiff's property."

■ Bare allegations of "bad faith" are conclusions which are not to be considered in determining whether a plaintiff has stated a cause of action. Ryan v. City of Warrensburg, 342 Mo. 761, 117 S.W.2d 303 (1938); Goodson v. City of Ferguson, 339 S.W.2d 841, 845 (Mo.1960). In this case, other than the conclusion which we do not consider, plaintiff has alleged only that after extended negotiations between plaintiff and the Commission without reaching an agreement, the Commission determined it would not need the Douglas property for highway purposes prior to the expiration of plaintiff's lease. We do not determine whether "bad faith" negotiations could constitute a taking or damaging of plaintiff's property interest because the pleaded facts, together with all reasonable inferences, do not authorize a finding of bad faith. The petition does not set forth a cause of action on this theory.

Plaintiff's final point is that the petition stated a cause of action against the Commission for "tortious invasion of contract."

■ First, in the absence of a statute or constitutional provision imposing such liability, the Commission is not liable for its torts. Bush v. State Highway Commission, 329 Mo. 843, 46 S.W.2d 854 (1932); Manley v. State Highway Commission, 82 S.W.2d 619 (Mo.App.1935). Second, we find that plaintiff has not alleged that the Commission did anything or took any action it was not authorized to take. Plaintiff had no legal right to a renewal of its lease as to either piece of property. The Commission was entitled to have plaintiff vacate the premises upon the expiration of plaintiff's lease, and there was no contract or other arrangement for a renewal. Therefore, there was no contract which the Commission could have "tortiously" invaded.

The judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

HENLEY, P. J., DONNELLY, C. J., and MORGAN, J., all concur.

FINCH, J., not a member of Division when cause was submitted.